## Rogers v. Weber

*John L. Hamaker*, for plaintiffs.

*Barley, Snyder Cooper & Mueller*, for defendants.

JOHNSTONE, J., June 6, 1958. — The complaint in this action in equity seeks an injunction restraining defendants from violating the restrictive covenants in a deed from defendants to plaintiffs and from maintaining or permitting to be maintained a nuisance on defendants' land. From the pleadings and the notes of testimony the court makes the following

## Findings of Fact

1. Plaintiffs, William H. Rogers and Eleanor I. Rogers, his wife, are adult residents of the Borough of New Holland, Lancaster County, and are the owners of a tract of land containing one acre, two and five-tenths perches, with the improvements thereon erected, consisting of a dwelling house, garage and professional offices situate on the north side of East Jackson Street in the said Borough of New Holland. Plaintiff, William H. Rogers, is a doctor of medicine and has maintained his professional offices on said premises during all of the times herein set forth.

2. Plaintiffs acquired title to and ownership of said premises by virtue of a deed dated February 26, 1953, wherein defendants, E. B. Weber and Grace V. Weber, his wife, are the grantors, they also being adult residents of the Borough of New Holland, Lancaster County, and said deed being recorded in the recorder's office at Lancaster, in Deed Book T, Vol. 42, p. 93.

3. The deed from defendants to plaintiffs contains seven restrictions and conditions, of which the two following are the only ones pertinent to the matter now before the court:

"4. No part of these premises or any building to be erected on these premises shall be used for any occupation, trade, business or purpose which may be dangerous, noxious, injurious to health, affecting the quiet and comfort or to be offensive to the inhabitants of the neighborhood composed of this tract or the adjoining tracts of land as laid out by the New Holland Homes Company.

"5. No part of these premises or any buildings to be erected on these premises shall be used for a club or fraternal house, or for entertainment or commercial purposes, and no intoxicating beverages shall be sold or distributed from these premises."

4. Defendants are the owners of a tract of land fronting 100 feet on the north side of East Jackson Street in New Holland Borough, Lancaster County, which adjoins plaintiffs' land on the west and which will be referred to herein as the "adjacent lot."

5. By the deed from defendants to plaintiffs, the restrictions set forth in finding of fact no. 3 are made binding on the adjacent lot of defendants.

6. At the time of the conveyance by defendants to plaintiffs, defendants owned the adjacent lot and a tract of land adjoining the adjacent lot on the west which was used as an amusement park and operated as such by defendants.

7. The amusement park was conveyed by defendants to Community Memorial Park Association, a non-profit corporation, by deed dated September 28, 1956, and recorded in the recorder of deeds office of Lancaster County in Deed Book E, Vol. 45, p. 508.

8. There is no clearly defined line of demarcation between the amusement park and the adjacent lot, and only a portion of the line between the adjacent lot and plaintiffs' land is marked by bushes and trees.

9. Prior to 1956, while defendants were the owners and operators of the park, they placed such objects

as benches, tables, garbage cans, swings, sliding board and a merry-go-round on the adjacent lot, and permitted the park users to use the adjacent lot for games, picnics and ball playing.

10. On occasions, the ball from the ball game struck plaintiffs' house and on one occasion a pine tree on plaintiffs' land was burned either from a cigarette or a charcoal burner used by someone from the park.

11. Plaintiffs complained to defendants about the use of the adjacent lot by the park users in each year from 1953 to 1957 inclusive.

12. The amusement park was managed and operated by the present owner, Community Memorial Park Association, during the summers of 1956 and 1957.

13. One of defendants, E. B. Weber, was one of the incorporators of the nonprofit park corporation and continues to be a director of the same, but his activities have been limited to acting in an advisory capacity on the operation of the swimming pool.

14. The use of the adjacent lot by the park users causes a great deal of noise and at times made it impossible for plaintiffs to carry on a conversation in their living room. Some of the language used was profane and improper for plaintiffs' four young daughters to hear.

15. The use of the adjacent lot by the park users is principally on Saturdays, Sundays and holidays from Memorial Day until shortly after Labor Day.

16. One of defendants, E. B. Weber, stated that he did not intend to protect the adjacent lot from use by the park users, but wanted the park to use the adjacent lot.

17. There were no swings, merry-go-round or sliding board on the adjacent lot during the summer season of 1957.

18. Defendant has entered into no agreement or

lease whereby the amusement park has been given the right to use the adjacent lot for park purposes.

19. Defendant has requested the manager of the amusement park to move people from the adjacent lot on a dozen occasions during the years 1956 and 1957. Defendants never personally asked anyone to move off of the adjacent lot.

20. The park association mows the grass on the adjacent lot.

21. Defendants have never notified anyone that the adjacent lot was private property or that trespassing was not permitted, and have erected no fence or barrier between the park and the adjacent lot.

22. The manager of the park has endeavored to keep people and park equipment off the adjacent lot as requested by defendants.

### Discussion

Defendants did not operate the park during the seasons of 1956 and 1957 and have had no active part in contributing to the use of the adjacent lot in those years. Because of the complaints made by plaintiffs concerning the use of the adjacent lot, defendants have been instrumental in having the park manager keep the adjacent lot comparatively free of park equipment and park users. From the fact that there is no barrier of any kind between the park and the adjacent lot, it would be practically impossible to keep the adjacent lot wholly free of people using the park. There are no signs advising the public that the adjacent lot is private property, and since the grass is mowed on the adjacent lot by the park personnel, the adjacent lot appears to be a part of the park and, especially when there is a crowd, people inevitably spill over on to the adjacent lot.

It is apparent from the record that defendants obtain no monetary gain from the use of the adjacent

lot by park users and that no permission has been granted by defendants to the park association to use the adjacent lot. It is also true that defendants have requested, on a number of occasions, the park manager to keep people off the adjacent lot and that the manager has complied with this request to the best of his ability. Defendants apparently would prefer to have the park people use the adjacent lot freely but because of plaintiffs' complaints, have endeavored to keep people off.

The question before the court is, do the restrictive covenants in the deed from defendants to plaintiffs place upon defendants an affirmative duty to keep the people using the park facilities from going on the adjacent lot and using the adjacent lot for park purposes? An examination of the restrictive covenants discloses that defendants agreed that the adjacent lot would not be used for any purpose which would affect the quiet and comfort of the neighborhood, including plaintiffs. Defendants also agreed that the adjacent lot would not be used for entertainment. Prior to the 1956 park season, defendants not only permitted but promoted the use of the adjacent lot for entertainment by placing thereon a merry-go-round, a slide, picnic tables and swings. Defendants also permitted the adjacent lot to be used in such a manner as to adversely affect the quiet and comfort of plaintiffs. However, since the beginning of the 1956 park season, defendants have done nothing actively to violate either of the covenants. In fact, they have given instructions to the park manager to keep people and park equipment off the adjacent lot in order to appease plaintiffs. Under the circumstances, anyone from the park using the adjacent lot is a trespasser.

Our research has brought to light no decision which would require defendants in this case to keep trespassers from their property. The case of Whitely v. Mort-

gage Service Company, 337 Pa. 475, called to our attention by defendants, comes closer to controlling the situation before us than any other. In that case the Supreme Court refused to include in an injunction the owner of leased premises from maintaining a nuisance created by a sublessee. The court held that it would be improper to place a continuing responsibility upon an owner out of possession for acts performed on the demised premises by someone over whom the owner had no control. In the present case defendants have no control over the people who use the park and who spill over onto the adjacent lot. So long as defendants do not by their own actions violate the restrictive covenants and do not give their consent or authorize others to use the adjacent lot in such a manner as to violate the covenants, in our opinion this court has no authority to require defendants to police the adjacent lot in such a manner as to prevent all persons from trespassing there. If, as was held in the Whitely case, the court has no power to include an owner of land out of possession in a restraining order for a nuisance maintained by a tenant, then this court has no power to restrain defendants for actions of trespassers on their land.

### Conclusions of Law

1. This court has jurisdiction of the subject matter and the parties to this suit.

2. Defendants have, prior to 1956, violated the covenants contained in their deed to plaintiffs by permitting and promoting the use of the adjacent lot for entertainment, which in turn adversely affected the quiet and comfort of plaintiffs.

3. A restraining order should be entered against defendants prohibiting them from directly or indirectly doing anything in the future which would constitute a violation of the restrictive covenants contained in their deed to plaintiffs.

4. This court has no power to issue an injunction against defendants directing them to keep all persons from their land who might engage in activities which could be described as entertainment, and which might adversely affect the peace and comfort of plaintiffs.

5. Defendants, since the beginning of the park season of 1956, have not maintained or permitted to be maintained any nuisance on their land and have not violated the restrictive covenants contained in their deed to plaintiffs.

6. The costs of this proceeding should be shared equally by the parties.

### Decree Nisi

And now, June 6, 1958, it is ordered, adjudged and decreed that defendants, E. B. Weber and Grace V. Weber, are perpetually enjoined from using the lot adjacent to plaintiffs' land for entertainment or in any manner which adversely affects the peace and comfort of plaintiffs, and are further enjoined from permitting the use of said lot for such purposes by consenting, either directly or indirectly, to the use of said lot by any person or persons for entertainment or for any other purpose which might adversely affect the peace and comfort of plaintiffs. In entering this decree the court is not placing any affirmative duty on defendants to keep persons using the park from trespassing on the lot in question, but is merely restraining defendants from doing anything themselves which would violate the covenants in the deed or from consenting or permitting said lot to be used by others for such purposes. The costs of this proceeding shall be paid equally by plaintiffs and defendants. The prothonotary is directed to give notice of this decree nisi to the several parties to this proceeding, and unless exceptions are filed within 20 days after such notice, this decree shall be entered as of course by the prothonotary as the final decree.